IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

J & J SPORTS PRODUCTIONS, INC.,

     Plaintiff,                No. 2:09-cv-01225 FCD KJN

     v.

ANN MARIE BACHMAN and
GENEVA JONES, INDIVIDUALLY
and d/b/a THE BLUE MOON LOUNGE
& SPORTS BAR,                FINDINGS AND RECOMMENDATIONS

     Defendants.

_____/

     Presently before the court is plaintiff's application for default judgment.[1]  This matter was submitted without oral argument on December 16, 2009.  (Dkt. No. 12.)  The undersigned has fully considered the briefs and record in this case and, for the reasons stated below, will recommend that plaintiff's application for default judgment be granted.

////

////

---

[1]  This action proceeds before the undersigned pursuant to Eastern District of California Local Rule 302(c)(19) and 28 U.S.C. § 636(b)(1).  This matter was referred to the undersigned by an order entered February 9, 2010.  (Dkt. No. 13.)

1

1    I.      BACKGROUND[2]

2            Plaintiff, a California corporation, is a closed-circuit distributor of sports and

3    entertainment programming.  (Pl.'s Compl. ¶ 6, Dkt. No. 1; Gagliardi Aff. ¶ 3, Dkt. No. 11.)

4    Pursuant to a contract, plaintiff acquired exclusive commercial exhibition licensing rights to a

5    televised boxing match entitled "The World Awaits: Oscar De La Hoya v. Floyd Mayweather,

6    Jr., WBC Light Middleweight Championship Fight Program," which was broadcast via telecast

7    on Saturday, May 5, 2007 (the "Program").[3]  (Pl.'s Compl. ¶ 10; Gagliardi Aff. ¶ 3.)  Thereafter,

8    plaintiff entered into sublicensing agreements with various commercial entities across North

9    America, through which it granted limited public exhibition rights to the entities for the benefit

10   and entertainment of the patrons within the entities' respective establishments (e.g., hotels,

11   racetracks, casinos, taverns, bars, restaurants, social clubs, etc.).  (Pl.'s Compl. ¶ 11; Gagliardi

12   Aff. ¶ 3.)  Plaintiff made transmission of the Program available only to its customers, which were

13   commercial entities that had paid plaintiff a commercial sublicense fee to broadcast the program.

14   (Gagliardi Aff. ¶ 8; see also Pl.'s Compl. ¶ 11.)  For example, to exhibit the Program in a

15   commercial establishment that had a fire code occupancy of fifty persons, the commercial

16   sublicense fee would have been $2,200.  (Gagliardi Aff. ¶ 8 & Ex. 1.)

17           Defendants are alleged to be the owners, operators, or licensees of, and to do

18   business as, The Blue Moon Lounge & Sports Bar ("The Blue Moon").  (Pl.'s Compl. ¶¶ 7-8;

19   Garner Aff. at 2, 6, Dkt. No. 10, Doc. 10-4.)  The Blue Moon is located at 1239 East Hammer

20   Lane, Suite B, in Stockton, California.  (Pl.'s Compl. ¶¶ 7-8; Garner Aff. at 6.)  Defendants did

21   not obtain a license to exhibit the Program from plaintiff.

22           On May 5, 2007, plaintiff's investigator, Jason Garner, entered The Blue Moon

23

24           [2]  These background facts are taken from plaintiff's complaint and the affidavits
     submitted in support of plaintiff's application for default judgment.  (Dkt. Nos. 1, 10, 11.)

25
             [3]  The Program included "all under-card bouts and fight commentary encompassed in the
26   television broadcast of the event . . . ."  (Pl.'s Compl. ¶ 10.)

and observed the unauthorized broadcast of a portion of the Program on three, 32-inch

televisions.[4]  (Garner Aff. at 2.)  Garner's affidavit approximates The Blue Moon's seating

capacity at 50 people, and states that Garner observed approximately 25 patrons inside the bar

room of The Blue Moon during the brief time he was inside the establishment.  (Id.)

On May 4, 2009, plaintiff filed this action alleging that defendants unlawfully

intercepted and intentionally broadcast the Program at The Blue Moon for the purpose of direct

or indirect commercial advantage and/or private financial gain.  (See generally Pl.'s Compl.)

Plaintiff alleges four claims for relief, which are labeled as "Counts" in the complaint.  Plaintiff's

first claim for relief alleges that defendants engaged in the unauthorized publication or use of

communications in violation of the Federal Communications Act of 1934, 47 U.S.C. §§ 605 et

seq.[5]  (Pl.'s Compl. ¶¶ 9-18.)  Its second claim alleges that defendants engaged in the

unauthorized interception, reception, divulgence, display, and exhibition of the Program at The

Blue Moon in violation of 47 U.S.C. §§ 553 et seq.[6]  (Pl.'s Compl. ¶¶ 19-23.)  Plaintiff's third

claim alleges a common law claim of conversion.  (Id. ¶¶ 24-27.)  Its fourth claim for relief

alleges a violation of California Business and Professions Code §§ 17200 et seq.  (Pl.'s Compl.

¶¶ 28-37.)

A declaration of service filed with the court demonstrates that on July 3, 2009,

plaintiff, through a process server, attempted personal service on defendant Bachman at the

address of The Blue Moon, 1239 East Hammer Lane, Suite B, Stockton, California 95210.  (Dkt.

---

[4]  Garner's affidavits states that he entered The Blue Moon at approximately 8:24 p.m., ordered a drink from the bartender, observed the broadcast of the singing of the United States National Anthem and an announcement by the ringside announcer that the next boxing match would feature Oscar De La Hoya and Floyd Mayweather, Jr., and left at approximately 8:27 p.m. (Garner Aff. at 2.)

[5]  Title 47 U.S.C. § 605 and provisions that follow prohibit the unauthorized use of wire or radio communications, including interception and broadcast of pirated cable or broadcast programming.

[6]  Title 47 U.S.C. § 553 and related provisions prohibit the unauthorized interception or receipt, or assistance in the intercepting or receiving, of cable service.

1    No. 5.)  The declaration states that process was left with Andrea Godearde, described as the

2    "person in charge," with instructions to deliver the documents to defendant Bachman, and that a

3    copy of the summons, complaint, and related documents were mailed to defendant Bachman on

4    July 6, 2009.[7]  (Id.)  An additional declaration of service filed with the court indicates that

5    defendant Jones was served in a similar manner on July 7, 2009.  (See Dkt. No. 6.)

6          On August 11, 2009, the Clerk of this Court entered a certificate of entry of

7    default against defendants.  (Dkt. No. 8.)  In entering such default, the Clerk of Court stated that

8    it appeared from the record and papers on file in the action that defendants were duly served with

9    process yet failed to appear, plead, or answer plaintiff's complaint within the time allowed by

10   law.  (Id.)

11         On December 7, 2009, plaintiff filed the application for default judgment that is

12   presently before the court.  (Dkt. No. 10.)  The application seeks judgment on plaintiff's claims

13   for violation of 47 U.S.C. § 605 and 47 U.S.C. § 553, and for common law conversion.[8]  Plaintiff

14   requests judgment in the amount of $112,000.[9]  Plaintiff filed a proof of service indicating that it

15   served defendants with the notice of the application for default judgment by mail.  (Dkt. No. 10

16   at 4.)  No response to this application is on record in this action.

17   II.   LEGAL STANDARDS

18         Pursuant to Federal Rule of Civil Procedure 55, default may be entered against a

19   party against whom a judgment for affirmative relief is sought who fails to plead or otherwise

20   ─────────────────────

21         [7]  The declaration also avers that personal service had been attempted on two prior
     occasions.  (Dkt. No. 5 at 2.)

22

23         [8]  The application does not specifically request judgment on plaintiff's claim that
     defendants violated California Business and Professions Code §§ 17200 et seq., and plaintiff's
     memorandum in support of the application does not address this claim.  Accordingly, the
24   undersigned does not address this claim.

25         [9]  Although plaintiff also seeks attorney's fees and relevant costs, it has provided no legal
     argument or evidentiary support for its request for fees and costs.  Accordingly, the undersigned
26   does not address those requests.

defend against the action.  See Fed. R. Civ. P. 55(a).  However, "[a] defendant's default does not

automatically entitle the plaintiff to a court-ordered judgment." PepsiCo, Inc. v. Cal. Sec. Cans,

238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002) (citing Draper v. Coombs, 792 F.2d 915, 924-25

(9th Cir. 1986)); see Fed. R. Civ. P. 55(b) (governing the entry of default judgments).  Instead,

the decision to grant or deny an application for default judgment lies within the district court's

sound discretion.  Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980).  In making this

determination, the court may consider the following factors:

> (1) the possibility of prejudice to the plaintiff; (2) the merits of
> plaintiff's substantive claim; (3) the sufficiency of the complaint;
> (4) the sum of money at stake in the action; (5) the possibility of a
> dispute concerning material facts; (6) whether the default was due
> to excusable neglect; and (7) the strong policy underlying the
> Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  Default judgments are ordinarily

disfavored. Id. at 1472.

As a general rule, once default is entered, well-pleaded factual allegations in the

operative complaint are taken as true, except for those allegations relating to damages.

TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987) (per curiam) (citing

Geddes v. United Fin. Group, 559 F.2d 557, 560 (9th Cir. 1977) (per curiam)); see also Fair

Housing of Marin v. Combs, 285 F.3d 899, 906 (9th Cir. 2002).  Although well-pleaded

allegations in the complaint are admitted by a defendant's failure to respond, "necessary facts not

contained in the pleadings, and claims which are legally insufficient, are not established by

default." Cripps v. Life Ins. Co. of N. Am., 980 F.2d 1261, 1267 (9th Cir. 1992) (citing Danning

v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978)); accord DIRECTV, Inc. v. Huynh, 503 F.3d 847,

854 (9th Cir. 2007) ("[A] defendant is not held to admit facts that are not well-pleaded or to

admit conclusions of law" (citation and quotation marks omitted).); Abney v. Alameida, 334 F.

Supp. 2d 1221, 1235 (S.D. Cal. 2004) ("[A] default judgment may not be entered on a legally

insufficient claim.").  A party's default conclusively establishes that party's liability, although it

1  does not establish the amount of damages.  Geddes, 559 F.2d at 560; cf. Adriana Int'l Corp. v.

2  Thoeren, 913 F.2d 1406, 1414 (9th Cir. 1990) (stating in the context of a default entered pursuant

3  to Federal Rule of Civil Procedure 37 that the default conclusively established the liability of the

4  defaulting party).

5  III.   ANALYSIS

6        A.    Appropriateness of the Entry of Default Judgment Under the Eitel Factors

7              1.    Factor One: Possibility of Prejudice to Plaintiff

8        The first Eitel factor considers whether the plaintiff would suffer prejudice if

9  default judgment is not entered, and such potential prejudice to the plaintiff militates in favor of

10 granting a default judgment.  See PepsiCo, Inc., 238 F. Supp. 2d at 1177.  Here, plaintiff would

11 potentially face prejudice if the court did not enter a default judgment.  Absent entry of a default

12 judgment, plaintiff would be without another recourse for recovery.  Accordingly, the first Eitel

13 factor favors the entry of default judgment.

14             2.    Factors Two and Three: The Merits of Plaintiff's Substantive Claims and
                     the Sufficiency of the Complaint
15

16       The undersigned considers the merits of plaintiff's substantive claims and the

17 sufficiency of the complaint together below because of the relatedness of the two inquiries.  The

18 undersigned must consider whether the allegations in the complaint are sufficient to state a claim

19 that supports the relief sought.  See Danning, 572 F.2d at 1388; PepsiCo, Inc., 238 F. Supp. 2d at

20 1175.

21       Plaintiff seeks entry of default judgment on its claims brought pursuant to 47

22 U.S.C. § 605(a) and 47 U.S.C. § 553(a).[10]  Plaintiff's inability to allege the precise nature of the

23

24       [10]  The undersigned does not address the merits of, or sufficiency of the allegations in
     support of, plaintiff's state law claim for conversion.  As discussed more fully below, the
25   undersigned need not reach plaintiff's conversion claim because the recommended statutory
     damages, if awarded, will sufficiently compensate plaintiff such that an award for conversion
26   damages would be duplicative.

intercepted transmission in this case, which is largely due to defendants' failure to appear or defend themselves in the action, raises a question regarding the scope of 47 U.S.C. § 605(a) and the sufficiency of plaintiff's claim under that provision.  The Federal Communications Act prohibits, among other things, commercial establishments from intercepting and broadcasting radio communications to its patrons.  See 47 U.S.C. § 605(a).  In relevant part, 47 U.S.C. § 605(a) states:

> No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person.  No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.  No person having received any intercepted radio communication or having become acquainted with the contents, substance, purport, effect, or meaning of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

The Ninth Circuit Court of Appeals has determined that satellite television signals are covered communications under 47 U.S.C. § 605(a).  DIRECTV, Inc. v. Webb, 545 F.3d 837, 844 (9th Cir. 2008).

The scope of section 605(a) is less clear with respect to transmissions intercepted from a cable system, which are expressly covered under 47 U.S.C. § 553(a).  Section 553(a) states, in relevant part:  "No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law."  47 U.S.C. § 553(a)(1).[11]

---

[11] Section 553 carries lower minimum statutory damages and lower enhanced damages than section 605.  Compare 47 U.S.C. §§ 605(e)(3)(C)(i)(II) and 605(e)(3)(C)(ii) (providing for the award of statutory damages of not less than $1,000 and no more than $10,000, and under

1    Here, plaintiff has not alleged whether the transmission that defendants

2  intercepted was from a cable system or a satellite television signal.  As plaintiff's brief correctly

3  suggests, a split of authority has developed regarding the scope of section 605(a) in that

4  numerous courts have concluded that section 605(a) applies exclusively to broadcasts obtained

5  by way of a satellite television signal, as opposed to transmissions over a cable system, and that

6  section 553 applies exclusively to transmission over a cable system.  Compare United States v.

7  Norris, 88 F.3d 462, 466-69 (7th Cir. 1996) (holding that sections 553(a) and 605(a) are not

8  "overlapping statutes" and are thus mutually exclusive), with Int'l Cablevision, Inc. v. Sykes, 75

9  F.3d 123, 132-33 (2d Cir. 1996) (holding that section 605 and section 553 are not completely

10  overlapping); see also TKR Cable Co. v. Cable City Corp., 267 F.3d 196, 204-07 (3d Cir. 2001)

11  (recognizing the disagreement between the holdings in Norris and Sykes, and holding "that § 605

12  encompasses the interception of satellite transmissions to the extent reception or interception

13  occurs prior to or not in connection with, distribution of the service over a cable system, and no

14  more" (internal quotation marks omitted).).

15    At a minimum, plaintiff's complaint and evidence support a conclusion that

16  defendants intercepted, without authorization, a transmission of the Program and broadcast it to

17  its patrons.  (Pl.'s Compl. ¶¶ 3, 13, 20; Garner Aff. at 2.)  Plaintiff essentially concedes that its

18  complaint and the record contain no allegations or evidence substantiating the nature of the

19  transmission that was intercepted by defendants.  Plaintiff argues, however, that although it was

20  unable to allege the precise means of transmission in this case (i.e., transmission over a cable

21  system or satellite broadcast), it "should not be prejudiced" given defendants' failure to appear or

22  defend itself in this action.  (Pl.'s Memo. of P. & A. in Supp. of Application for Default J. at 3,

23  Dkt. No. 10, Doc. No. 10-2.)  The undersigned agrees with plaintiff that under the circumstances

24

25  certain circumstances enhanced damages of up to $100,000 per violation), with 47 U.S.C.
§ 553(c)(3)(A)(ii) (providing for the award of statutory damages of not less than $250 and not

26  more than $10,000, and under certain circumstances enhanced damages of up to $50,000 per
violation).

of this case, where plaintiff was deprived of the opportunity to conduct discovery regarding the transmission at issue because of defendants' failure to appear or defend itself in this action, plaintiff should not suffer the resulting prejudice.  In any event, the split of authority presented above has little practical impact in this case because the undersigned will recommend the entry of a judgment in the total amount of $10,000, which is the maximum, non-enhanced statutory damages available under both 47 U.S.C. § 553(c)(3)(A)(ii) and 47 U.S.C. § 605(e)(3)(C)(i)(II).  Thus, insofar as the merits of plaintiff's statutory claims and the sufficiency of its pleadings under the <u>Eitel</u> factors are concerned, the complaint and record before the undersigned favor entry of default judgment.

3.     <u>Factor Four: The Sum of Money at Stake in the Action</u>

Under the fourth factor cited in <u>Eitel</u>, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct."  <u>PepsiCo, Inc.</u>, 238 F. Supp. 2d at 1177; <u>see also</u> <u>Philip Morris USA, Inc. v. Castworld Prods., Inc.</u>, 219 F.R.D. 494, 500 (C.D. Cal. 2003).  Here, plaintiff seeks a significant amount of damages, i.e., $112,200.  However, plaintiff's request for statutory damages and damages for conversion are tailored to defendants' specific wrongful conduct.  Plaintiff seeks statutory damages under the federal statutes implicated by its claims and, although plaintiff requests $110,000 in statutory damages, the statutes involved contemplate such an award under certain circumstances.[12]  Under these circumstances, the undersigned concludes that this factor favors the entry of default judgment.

4.     <u>Factor Five: The Possibility of a Dispute Concerning Material Facts</u>

The facts of this case are relatively straightforward, and plaintiff has provided the court with well-pleaded allegations supporting its statutory claims and affidavits in support of its allegations.  Here, the court may assume the truth of well-pleaded facts in the complaint (except as to damages) following the clerk's entry of default and, thus, there is no likelihood that any

---

[12]  Whether plaintiff is entitled to an award of this size is a different issue, which the undersigned addresses in greater detail below.

9

1   genuine issue of material fact exists.[13]  See, e.g., Elektra Entm't Group Inc. v. Crawford, 226

2   F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken

3   as true after the court clerk enters default judgment, there is no likelihood that any genuine issue

4   of material fact exists."); accord Philip Morris USA, Inc., 219 F.R.D. at 500; PepsiCo, Inc., 238

5   F. Supp. 2d at 1177.

6             5.      Factor Six: Whether the Default Was Due to Excusable Neglect

7           Upon review of the record before the court, the undersigned finds that the default

8   was not the result of excusable neglect.  See PepsiCo, Inc., 238 F. Supp. 2d at 1177.  Plaintiff

9   made numerous attempts to personally serve each defendant with the summons and complaint

10  and ultimately effectuated substituted service of those documents on each defendant.  Moreover,

11  plaintiff served defendants by mail with notice of its application for default judgment.  Despite

12  ample notice of this lawsuit and plaintiff's intention to seek a default judgment, defendants have

13  not appeared in this action to date.  Thus, the record suggests that defendants have chosen not to

14  defend themselves in this action, and not that the default resulted from any excusable neglect.

15  Accordingly, this Eitel factor favors the entry of a default judgment.

16            6.      Factor Seven: The Strong Policy Underlying the Federal Rules of Civil
                      Procedure Favoring Decisions on the Merits

17

18          "Cases should be decided upon their merits whenever reasonably possible."  Eitel,

19  782 F.2d at 1472.  However, district courts have concluded with regularity that this policy,

20  standing alone, is not dispositive, especially where a defendant fails to appear or defend itself in

21  an action.  PepsiCo, Inc., 238 F. Supp. 2d at 1177; see also Craigslist, Inc. v. Naturemarket, Inc.,

22  ___ F. Supp. 2d ___, No. C 08-5065 PJH, 2010 WL 807446, at *16 (N.D. Cal. Mar. 5, 2010);

23  ACS Recovery Servs., Inc. v. Kaplan, No. C 09-01304, 2010 WL 144816, at *7 (N.D. Cal. Jan.

24  11, 2010) (unpublished); Hartung v. J.D. Byrider, Inc., No. 1:08-cv-00960 AWI GSA, 2009 WL

25         [13]  Defendants' failure to file an answer in this case further supports the conclusion that

26  the possibility of a dispute as to material facts is minimal.

1876690, at *5 (E.D. Cal. June 26, 2009) (unpublished).  Accordingly, although the undersigned is cognizant of the policy in favor of decisions on the merits—and consistent with existing policy would prefer that this case be resolved on the merits—that policy does not, by itself, preclude the entry of default judgment.

Upon consideration of the Eitel factors, the undersigned concludes that plaintiff is entitled to the entry of default judgment against defendants and will make a recommendation to that effect.  What remains is the determination of the amount of damages to which plaintiff is entitled.

B.      Terms of the Judgment to Be Entered

After determining that a party is entitled to entry of default judgment, the court must determine the terms of the judgment to be entered.  Considering plaintiff's briefing and the record in this case, including the affidavits and declarations submitted by plaintiff, the undersigned concludes that plaintiff is entitled to an award of statutory damages in the amount of $10,000 as a result of defendants' unlawful interception and broadcast of the Program, and will recommend the same.

Pursuant to section 605, a court may award statutory damages of "not less than $1,000 or more than $10,000" for violation of the Federal Communications Act, and may also award enhanced damages of up to $100,000 if the "violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain."  47 U.S.C. § 605(e)(3)(C)(i)(II), (e)(3)(C)(ii).  Where a violation 47 U.S.C. § 553(a) is concerned, a court may award statutory damages of "not less than $250 or more than $10,000," and may increase the award up to $50,000 if the "violation was committed willfully and for purposes of commercial advantage or private financial gain."  47 U.S.C. § 553(c)(3)(A), (B).

Here, plaintiff seeks a judgment in the amount of $112,200.  Plaintiff's application for default judgment and proposed order indicate that this sum consists of $110,000 for a violation of 47 U.S.C. § 605(e)(3)(B)(iii) and (e)(3)(C)(ii), and $2,200 as compensatory

1   damages arising from defendants' act of conversion.  (See Dkt. No. 10 at 3; Doc. No. 10-5 at 2.)

2   Plaintiff's investigator's affidavit states that The Blue Moon had a seating

3   capacity of 50 and that there were approximately 25 patrons inside the bar on the night in

4   question.  (Garner Aff. at 2.)  It further states that The Blue Moon was unlawfully broadcasting

5   the Program on three 32-inch televisions in elevated locations.  (Id.)  Plaintiff provided no

6   evidence that The Blue Moon had prepared any special advertising for the broadcast of the

7   Program, that payment of a cover charge was required to enter The Blue Moon on the night of the

8   broadcast, or that The Blue Moon charged a special premium for food or drink that night.

9   Plaintiff does not suggest that The Blue Moon had increased business as a result of the broadcast,

10  or that defendants are repeat offenders with respect to intercepting transmissions of the type at

11  issue here.  Balancing these facts with the widespread problem of piracy and the need for an

12  award sufficient to deter future piracy, the undersigned will recommend an award of statutory

13  damages in the amount of $10,000.  On the record before the court, the undersigned does not find

14  that this case merits an award of enhanced damages.

15  Plaintiff also seeks actual damages for defendants' alleged tortious act of

16  conversion in the amount of $2,200, which consists of the fee that defendants would have had to

17  pay to plaintiff in order to lawfully broadcast the Program through a contractual sublicense.[14]

18  (See Pl.'s Proposed Order at 2, Dkt. No. 10, Doc. No. 10-5; Gagliardi Aff. ¶ & Ex. 1.)  The

19  undersigned will not recommend an award of damages with respect to plaintiff's conversion

20  claim.  The statutory damages provisions at issue serve not only a deterrent function, see J & J

21  Sports Prods. v. Orellana, No. 08-05468 CW, 2010 WL 1576447, at *3 (N.D. Cal. Apr. 19, 2010)

22  (unpublished), but also a compensatory function, which is evidenced by provisions that permit

23  the award of statutory damages or actual damages in a civil action.  See 47 U.S.C.

24

25      [14]  Damages for conversion are measured, in relevant part, by the value of the property at
    the time of the conversion.  Cal. Civ. Code § 3336; see also Stan Lee Trading, Inc. v. Holtz, 649
26  F. Supp. 577, 581 (C.D. Cal. 1986); Spates v. Dameron Hosp. Ass'n, 114 Cal. App. 4th 208, 221,
    7 Cal. Rptr. 3d 597, 608 (Ct. App. 2003).

§ 605(e)(3)(C)(I); 47 U.S.C. § 553(c)(3)(A)(i).  Here, the recommended award of statutory damages in the amount of $10,000 sufficiently compensates plaintiff, and this case does not present a set of circumstances where an additional award might be warranted.  Accordingly, the undersigned will recommend that plaintiff be awarded no damages on its conversion claim.[15]

Finally, although the prayer for relief in the complaint and the application for default judgment indicate that plaintiff seeks the award of costs and attorneys' fees, the application for default judgment contains no argument or evidence in support of such a request. Accordingly, the undersigned will not recommend the award of costs or attorneys' fees.

IV.   CONCLUSION

For the reasons stated above, the court HEREBY RECOMMENDS that:

1.   Plaintiff's application for default judgment (Dkt. No. 10) against defendants Ann Marie Bachman, individually and doing business as The Blue Moon Lounge & Sports Bar, and Geneva Jones, individually and doing business as The Blue Moon Lounge & Sports Bar, be granted;

2.   The court enter judgment against defendant on plaintiff's claims brought pursuant to 47 U.S.C. § 605(a) and 47 U.S.C. § 553(a);

3.   The court award statutory damages in an amount of $10,000.00 to plaintiff; and

---

[15]  Because the undersigned will not recommend an award of damages on plaintiff's conversion claim, the court need not address the thought-provoking question of whether an interest in intangible property such as an exclusive license to distribute a broadcast signal is the proper subject of a claim of conversion under California law.  Compare, e.g., Fremont Indem. Co. v. Fremont Gen. Corp., 148 Cal. App. 4th 97, 119-20, 55 Cal. Rptr. 3d 621, 638 (Ct. App. 2007) (acknowledging California courts' traditional refusal to recognize as conversion the unauthorized taking of intangible interests that are not merged with or reflected in something tangible), with DIRECTV, Inc. v. Pahnke, 405 F. Supp. 2d 1182, 1189-90 (E.D. Cal. 2005) (concluding that the exclusive right to distribute proprietary cable programming is the proper subject of a conversion claim under California law), and Don King Prods./Kingvision v. Lovato, 911 F. Supp. 419, 423 (N.D. Cal. 1995) (holding that plaintiff's alleged exclusive rights to distribute a telecast in California constituted a right to possession of property supporting a claim of conversion).

4.      This case be closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Turner v. Duncan</u>, 158 F.3d 449, 455 (9th Cir. 1998); <u>Martinez v. Ylst</u>, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

DATED:  May 7, 2010

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE